**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**WILLIAM C. DEAN and
MARY L. SEPULVEDA-DEAN**

    **Plaintiffs,**

**v.**                                                                                                            **CIV-05-943 JH/KBM**

**GORDON REISELT, et al.,**

    **Defendants.**

## MEMORANDUM OPINION and ORDER

This matter comes before the Court on Defendant Gordon Reiselt's Motion to Dismiss [Doc. No. 10, filed Apr. 13, 2006], brought pursuant to rules 12(b)(6) and 17 of the Federal Rules of Civil Procedure; on Reiselt's Motion for Summary Judgment [Doc. No. 15, filed May 26, 2006]; and on Reiselt's Motion to Strike Untimely Response [Doc. No. 18, filed June 8, 2006]. The Court concludes that sufficient cause exists to excuse the untimely filing of the Plaintiffs' response to the Motion to Dismiss, and will not grant the Motion to Strike. But because, after considering the parties' briefs, the record, and the applicable law, the Court concludes that both the Motion to Dismiss and the Motion for Summary Judgment are well-supported, the Court will dismiss William Dean's causes of action and will grant summary judgment in favor of Reiselt on Mary L. Sepulveda-Dean's claims for legal malpractice.

## GENERAL LEGAL STANDARDS

In deciding a motion to dismiss for failure to state a claim, the Court applies the following standard:

> [A]ll well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party. It is true that dismissal

> under Rule 12(b)(6) is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice. It is also well established that dismissal of a complaint is proper only if it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.

*Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks and citations omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). In reviewing a pro se complaint, a court applies the same legal standards applicable to pleadings counsel has drafted, but is mindful that the complaint must be liberally construed. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Id.* (citations omitted). The legal sufficiency of a complaint is a question of law. *See Moore*, 438 F.3d at 1039.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

2

Fed. R. Civ. P. 56(c).  "Summary judgment 'necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.'"  *Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1517 n.8 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Judgment is appropriate if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  *See id.*  "Because this is a diversity case, substantive issues are controlled by state law and procedural issues are controlled by federal law."  *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

## ALLEGATIONS and UNDISPUTED FACTS

Sepulveda-Dean hired Reiselt in September 1998 to represent her in an appeal from a January 1998 decision of the Office of Workers' Compensation Program ("OWCP") that terminated the federal worker's compensation benefits she had been receiving since 1988.  *See* Amend. Compl. ¶¶ 8, 14, 31, & 38-39; Pl. Motion Not to Dismiss, Exs. 3, 5, 10.  Reiselt became sick and was hospitalized in early 1999, remaining out of work until sometime in 2000.  *See* Pl. Mot. Not to Dismiss, Exs. 5, 6, 21.  During his absence, with the Plaintiffs' knowledge, Reiselt's law firm hired Ed Daniel, a paralegal/advocate to represent Sepulveda-Dean before the OWCP.  *See id.* Ex. 5; *id.* Ex. 7 (undated fax from Dean to Daniel sent in July 2000 stating that "[a]s of today I will hire a lawyer to go after O.W.C.P." after the OWCP sent Dean a letter rejecting Dean's attempt to challenge an examining physician's competency to form a medical opinion about Sepulveda-Dean's disability ).  Daniel is a retired federal workers compensation claims manager with twenty years experience working for the OWCP.  *See id.* Ex. 5.

The OWCP had denied reconsideration of its termination decision in April and June 1998,

before Reiselt or Daniel were hired. *See id.* Ex. 19. In June 1999, Daniel submitted a request for a merit review by the OWCP on the basis that the OWCP had failed to consider relevant medical evidence in reaching its 1998 decision that was contrary to the evidence the OWCP relied on. *See id.* Ex. 10. Daniel argued that, because of this conflict, the OWCP had not carried its burden to demonstrate that Sepulveda-Dean no longer suffered from an employment-related disability. *See id.* But the OWCP treated the request as one for reinstatement of benefits where the burden is on the appellant, and denied the request in September 1999. *See id.* Ex. 17, 19.

In April 2001, the Employees Compensation Appeal Board also refused to reinstate Sepulveda-Dean's benefits. It concluded that "the weight of medical evidence indicated that the employment related disability had ceased and that [the OWCP] met its burden of proof in the termination of compensation for wage loss as of 1/13/98." *Id.* Ex. 19 at 1. The Board denied reconsideration in June 2003, concluding that the evidence Reiselt submitted failed to establish that the Office had erred in any of the prior merit decisions. *See id.* Reiselt again requested reconsideration in July 2003, submitting additional exhibits. He supplemented the request in August 2003, but reconsideration was denied as untimely filed. *See id.* at 1-3. But, on the merits, the Board also refused to reopen the case because the exhibits submitted "failed to establish clear evidence of error [in] the [January 1998] decision terminating compensation benefits and the subsequent reconsideration decisions." *Id.* at 3.

The Plaintiffs allege that Reiselt improperly relied on Daniel, who they claim "left out necessary information that would have stopped [the] entire process of medical evaluation and decision from" Sepulveda-Dean's workers compensation claim, and which ultimately lead to the adverse decisions. Amend. Compl. ¶ 8 at 2, Pl. Motion Not to Dismiss Ex. 4. They claim that Reiselt failed

4

to ask for, pick up, and follow up on doctors' reports, and failed to review and submit all medical reports in the appeal. *Id.* ¶¶ 10-12 at 3. And they contend that Reiselt failed to submit an amended appeal that contained corrections. *Id.* ¶ 13. All counts of the amended complaint are based on these allegations.

      Count I does not allege any violations. In Count II, entitled "Breach of the Covenant of Good Faith and Fair Dealing/Bad Faith," *id.* at 4, Plaintiffs contend that Reiselt's actions demonstrate "fraud, deceit, oppression, malice, and/or bad faith." *Id.* ¶ 18. Count III, entitled "Legal Malpractice-Breach of Contract" is based on Reiselt's alleged failure to "appropriately represent" Sepulveda-Dean's interests. *See id.* at 4, ¶ 25 at 5. The fourth cause of action is entitled "Legal Malpractice-Breach of Covenant of Good Faith and Fair Dealing." *Id.* at 6. It alleges that Reiselt breached his duty to act in good faith by (1) acting in a manner that was "unfaithful to the purposes of the parties' contract" and Sepulveda-Dean's reasonable expectations; (2) failing to fulfill his "express promise to appropriately represent" Sepulveda-Dean with "undivided loyalty;" (3) failing to preserve Sepulveda-Dean's confidences; and by (4) failing to disclose to Sepulveda-Dean material matters bearing upon her representation. *Id.* ¶ 33. The fifth cause of action is entitled ""Legal Malpractice-Breach of Fiduciary Duty/Self Dealing." *Id.* at 7. It claims that Reiselt breached his fiduciary duty to Sepulveda-Dean by failing to (1) "ascertain, research, and or disclose material facts" to Sepulveda-Dean, *id.* ¶ 42; (2) represent Sepulveda-Dean "with undivided loyalty," *id.* ¶ 43; (3) preserve Sepulveda-Dean's confidences, *see id.*; (4) provide Sepulveda-Dean "with a full and fair disclosure of the nature and extent of their agreement," *id.*; and (5) "by failing to act with the utmost honesty and good faith, and by putting [his] interest above" Sepulveda-Dean's, *id.* ¶ 43 at 8. The sixth cause of action is entitled "Legal Malpractice-Negligence." *Id.* at 8. It alleges that Reiselt breached his

duty to competently represent Sepulveda-Dean and to be candid to the administrative agency by "committing self dealing" by putting his interests over Sepulveda-Dean's and/or by "failing to investigate the true nature of the proper methods of submitting a Worker's Compensation Claim and an Appeal." *Id.* ¶ 54 at 9.

## ANALYSIS

### I. MOTION TO STRIKE.

Reiselt filed his motion to dismiss Dean's claims on April 13, 2006. Under our local rules, a response must be served within 14 days of service of a motion, *see* D.N.M. LR-Civ. 7.6(a), thus a response was due on April 27. Dean did not timely respond to the motion to dismiss and did not request an extension of time in which to respond. Dean filed a Motion Not to Dismiss, which the Court construes as his response to Reiselt's Motion to Dismiss, on May 24. In an attachment to his motion, Dean asked the Court to excuse his late filing, claiming it was due to cluster headaches that affected his ability to see clearly because he could not use his eyeglasses. Pl. Mot. Not to Dismiss at 8.

Reiselt urges the Court to strike Dean's untimely response, arguing that the local rules are mandatory strictures that the Court must follow. The Court disagrees. First, the local rules themselves provide for judicial waiver "to avoid injustice." D.N.M. LR-Civ. 1.7. Further, "although district judges must follow local rules when adherence furthers the policies underlying the rules, they have discretion in applying and interpreting local rules." *Hernandez v. George*, 793 F.2d 264, 267 (10th Cir.1986).

When deciding how or whether to sanction a respondent based on submitting an untimely response to motions, Court should consider: "(1) the degree of actual prejudice to the defendant; (2)

the amount of interference with the judicial process; [and] (3) the culpability of the litigant." *Murray v. Archambo*, 132 F.3d 609, 611 (10th Cir. 1998) (internal quotation marks omitted).

In addressing the first factor, the Court notes that Reiselt apparently also violated the local rules by failing to request concurrence from Dean, a pro se party, regarding his Motion to Dismiss "at least (3) working days before filing a motion" and by failing to "recite that concurrence was refused or explain why concurrence could not be obtained. A motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M. LR-Civ. 7.4(a). If the Court were mandated to follow the local rules, it could summarily deny not only Reiselt's motion to dismiss and his motion to strike, but also his motion for summary judgment, as all three motions omit recitation of the good-faith request for concurrence. Allowing Dean to respond to the motion to dismiss twenty-seven days after it was due does not interfere with the case management deadlines established in this case, *see* D.N.M. LR-Civ. 7.6(a), and Reiselt has not alleged prejudice by Dean's untimely filing. Dean certainly should have sought an extension of time in which to respond to the motion to dismiss. The Court provided him a copy of the local rules and a pro se manual, and the magistrate judge in this case specifically warned him of the necessity of filing timely pleadings and following the rules. But Dean's health problems that he claims interfered with his ability to see weigh in favor of finding him less culpable for untimely filing than a party who gives no reason for delay. The Court will deny the motion to strike Dean's untimely response and will address the motion to dismiss on the merits.

## II.  **MOTION TO DISMISS.**

Reiselt contends that Dean must be dismissed as a party because he is not a real party in interest under rule 17 of the Federal Rules of Civil Procedure - *i.e.*, that he lacks standing to bring

7

suit because Sepulveda-Dean is the only party whose legal interests were violated.  "[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit." *FD IC v. Geldermann, Inc.*, 975 F.2d 695, 698 (10th Cir. 1992) (internal quotation marks omitted); *see L.R. Prop. Mgmt., Inc. v. Grebe*, 627 P.2d 864, 865 (N.M. 1981) ("A real party in interest is . . . one [who] is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit.") (internal quotation marks omitted).  In a diversity case, the forum state's substantive law determines whether a party is the real party in interest.  *See United States Cellular Inv. Co. of Okla. City, Inc. v. Southwestern Bell Mobile Sys., Inc.*, 124 F.3d 180, 182 (10th Cir. 1997).

> There are three elements to Article III standing: 1) injury-in-fact; 2) causation; and 3) redressability.  An injury-in-fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical.  Causation is found upon a showing that the injury is fairly traceable to the challenged action of the defendant, rather than some third party not before the court.  Redressability requires the plaintiff to show that it is likely that a favorable court decision will redress the injury to the plaintiff.

*Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004). *Id.* (quotation marks, bracket, and citations omitted).  One who is not a real party in interest has no standing because he cannot show an injury in fact of his legally protected interest.

Dean asserts that he has standing to sue because (1) he allegedly has a right to receive a percentage of Sepulveda-Dean's benefits; (2) Sepulveda-Dean gave him a power of attorney to represent her in the workers compensation case; and (3) Dean's disability pension was allegedly used to pay Reiselt's attorney fees.  Although, at the pretrial conference Dean admitted that he was "more or less raising [the claims] for my wife because she's not competent to take care of her own matters," Tape of 1/11/06 pretrial conference, Dean attaches several exhibits to his response to the motion to

8

dismiss in support of his claim that he has standing to bring suit.

While the Court generally may not consider exhibits outside the pleadings without treating the motion to dismiss as one for summary judgment and giving the parties notice, the Court may review "mere argument contained in a memorandum in opposition to dismiss." *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 457 (10th Cir. 1978). Thus the Court has not considered Dean's exhibits, but will address his arguments.

In New Mexico, to sue for legal malpractice, the plaintiff must allege an attorney's employment as an essential element. *See Rancho del Villacito Condos., Inc. v. Weisfeld*, 908 P.2d 745, 748-49 (N.M. 1995) (listing elements of legal malpractice claim). This requirement comports with the "general rule of law that one who is not a party to a contract cannot maintain a suit upon it." *Staley v. New*, 250 P.2d 893, 894 (N.M. 1952). The complaint states that Sepulveda-Dean hired Reiselt to represent her in her workers compensation action; nowhere does it state that Dean hired Reiselt to represent him in any capacity, and when given the opportunity to establish the attorney-client relationship, Dean did not attempt to do so in his response to the motion to dismiss. Thus, Dean has not, and cannot, state facts showing that he has a legally protected interest in the attorney-client contract or relationship between Reiselt and Sepulveda-Dean.

Instead, Dean seeks to establish standing on the basis of his claim that he has a right to benefit[1] from his wife's benefits. New Mexico recognizes that a third-party beneficiary may have an

---

[1] Dean asserts that he has a right to "receive a percentage of his wife's benefits, as provided by Law," citing Ex. 1, which is an unidentified document that explains pay rates. The Court has not considered this exhibit, but if it did, the Court notes that the exhibit contradicts his claim. *See* 5A Wright & Miller, FEDERAL PRACTICE & PROCEDURE: Civil 2d § 1327 at 766 (1990) ("The district court is obviously not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material as long as the justice-seeking

enforceable right against a party to a contract, but the intent of the parties to make the third party a beneficiary "must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Fleet Mortg. Corp. v. Schuster*, 811 P.2d 81, 83 (N.M. 1991). In *Leyba v. Whitley*, the New Mexico Supreme Court explained that

> the foundation of any malpractice claim by an intended beneficiary remains the express or implied contract that gives rise to the lawyer-client relationship. 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 8.2, at 403 (3d ed. 1989) ("Almost invariably, any theory of legal malpractice must rest upon an attorney-client relationship.").

907 P.2d at 176. Nowhere in the complaint does Dean allege that he was the intended beneficiary of Sepulveda-Dean's contract with Reiselt. Based on the facts alleged in the complaint and his response to the motion to dismiss, Dean is simply an incidental beneficiary: "'a person who is neither the promisee of a contract nor the party to whom performance is to be rendered [but who] will derive a benefit from its performance.'" *Fleet Mortg. Corp.*, 811 P.2d at 83 (quoting 2 S. Williston, A TREATISE ON THE LAW OF CONTRACTS § 402 (W. Jaeger 3d ed. 1959)). As such, he does not have standing to bring suit against Reiselt for legal malpractice, breach of contract, breach of fiduciary duty, or breach of the covenant of good faith and fair dealing. *See id.*; *McKinney v. Davis*, 503 P.2d

---

objectives of the federal rules are kept in mind. It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit."). The document states that, if a claimant has no eligible dependents, "the basic rate of compensation is 66 2/3% of the applicable pay rate," but that "[c]ompensation is payable at 75% of the applicable pay rate if one or more dependents is eligible for compensation." Pl. Mot. Not to Dismiss Ex. 1. This document does not give Dean an independent right to receive anything; it simply states that Sepulveda-Dean will be paid more if Dean is an eligible dependent. Dean's interest, if any, apparently would be only his community-property interest in the proceeds under Nevada law. *See* Nev. Rev. Stat. Ann. § 123.220 (2005) (explaining that, "[a]ll property . . . acquired after marriage by either husband or wife, or both, [except for separate property as defined in other statutes] is community property unless . . . otherwise provided by . . . [a]n agreement in writing between the spouses").

332, 333 (N.M. 1972) (stating that "the parties to the contract must have intended to benefit the third party, who must be something more than a mere incidental beneficiary"); *Dinger v. Shea*, 685 So. 2d 485, 486 (La. Ct. App. 1996) (holding that, because husband never entered into an attorney-client relationship with wife's attorney who represented her in workers' compensation case, husband had no cause of action for legal malpractice); *Crane v. Albertelli*, 592 S.E.2d 684 (Ga. Ct. App. 2003) (affirming dismissal of husband's claims for legal malpractice and breach of fiduciary duty because he had no attorney-client relationship with his wife's attorney).

Further, even if Dean paid some of Reiselt's attorney's fees with proceeds from his disability checks[2], that does not give him standing to bring suit against Reiselt. And the fact that Sepulveda-Dean gave Dean a power of attorney to assist her in the workers compensation proceedings does not confer standing upon him to bring suit against Reiselt in his own behalf, in the absence of a contract between Dean and Reiselt. The Court will dismiss Dean as a plaintiff. Upon the filing of this order, Dean may not file any further pleadings or motions on behalf of Sepulveda-Dean, since he is not a licensed attorney. If Sepulveda-Dean is unable to represent herself, she will need to obtain the services of an attorney.

## III.  MOTION FOR SUMMARY JUDGMENT.

Once entered, it is the pretrial order, and not the complaint, that defines the scope of litigation. *See Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997); *Fahrbach v. Diamond Shamrock, Inc.*, 928 P.2d 269, 276 (N.M. 1996) ("A pretrial order narrows the issues for

---

[2] The amended complaint indicates that Sepulveda-Dean received federal workers compensation benefits for more than ten years, and that she was receiving $28,800/year when benefits were terminated. *See* Amend. Compl. at 10. Thus, the complaint does not support Dean's bald allegation, made in the brief, that Reiselt's fees were paid only from Dean's retirement disability benefits.

11

trial, reveals the parties' real contentions, and eliminates unfair surprise."). At a pretrial conference, the Plaintiffs stated that their only claims were for legal malpractice. The magistrate judge then instructed the Plaintiffs "to be detailed as to the claims" in their pretrial report, and to state there "exactly what [Reiselt] did that constitutes malpractice." Tape of 1/11/06 pretrial conference. In the pretrial order controlling this case, the Court adopted the contentions in Sepulveda-Dean's pretrial report and supplement. *See* Rec. Doc. 9 at 1. Sepulveda-Dean thus narrowed the issues for trial to whether Reiselt breached a fiduciary duty to fervently represent her by relying on Daniel; and whether Reiselt committed legal malpractice by failing to obtain and follow up on medical reports and other information and by failing to follow the "[a]pplicable standard[s] of care" for legal representation. *See id.* Ex. 1 at 2-3. Sepulveda-Dean's expert witness reports were due by April 3, 2006. R. Doc. 8 at 1.

Reiselt's motion for summary is based on his assertion that Sepulveda-Dean cannot carry her burden of proof at trial on these various kinds of legal malpractice claims because she has failed to identify an expert witness to explain the standard of care an attorney must follow in representing a client in Sepulveda-Dean's position. The Court agrees.

Although no New Mexico cases address the difference between a claim based on breach of fiduciary duty and one alleging malpractice arising from negligence, the Court believes that New Mexico would follow the majority view as stated in legal treatises and cases from other states. *See County of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The Court may also consider medical malpractice cases in analyzing the motion for summary judgment. *See Andrews v. Saylor*, 80 P.3d 482, 487 (N.M. Ct. App. 2003) (stating that legal malpractice should be treated no differently than other types of professional malpractice).

According to a treatise that the New Mexico Supreme Court has cited in other legal malpractice cases, *see*, *e.g. Leyba*, 907 P.2d at 176, a breach-of-fiduciary-duty claim is one for legal malpractice. *See* 2 Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE § 14.2 at 604 (2006 ed.) But "[l]egal malpractice based on negligence concerns violations of a standard of care; whereas legal malpractice based upon breach of duty concerns violations of a standard of conduct." *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct. App. 1996). "The standard of conduct [in fiduciary-duty claims] concerns a breach of loyalty or confidentiality." 2 Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE § 14.2 at 605 (2006 ed.). Thus, a claim for breach of fiduciary duty "uses the model for negligence, substituting the particular fiduciary obligation for the duty of care." *Id*. at 605-06. The elements to be proven, therefore, include "(1) an attorney-client relationship; (2) breach of the attorney's duty to the client; (3) causation, both actual and proximate; and (4) damages . . ." *Kilpatrick*, 909 P.2d at 1290; *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1046 (Md. 1995) (accord).

Similarly, "[t]o recover on a claim of legal malpractice based on negligence, a plaintiff must prove three essential elements: (1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff." *Rancho del Villacito Condos., Inc.*, 908 P.2d at 748-49 (internal quotation marks omitted). "As to the second element, a plaintiff must show, usually through expert testimony, that his or her attorney failed to use the skill, prudence, and diligence of an attorney of ordinary skill and capacity." *Id.* (internal quotation marks omitted); *Rodriguez v. Horton*, 622 P.2d 261, 264 (N.M. Ct. App. 1980) ("To establish legal malpractice, the testimony of another attorney as to the applicable standards of practice is usually necessary. A lawyer holding himself out to the

public as specializing in an area of the law must exercise the same skill as other specialists of ordinary ability specializing in the same field.") (citation omitted).

In New Mexico, the exception to the rule that an expert is usually necessary to establish malpractice is when the alleged negligence "can be determined by resort to common knowledge ordinarily possessed by an average person." *Gerety v. Demers*, 589 P.2d 180, 195 (N.M. 1978) (internal quotation marks omitted) (discussing necessity of experts in medical malpractice cases); *Walters v. Hastings*, 500 P.2d 186, 192 (N.M. 1972) ("We recognize that situations may arise in which the proof is so clear and obvious that a trial court could, with propriety, rule as a matter of law on whether the attorney met the standards. Similarly, cases may arise in which the asserted shortcomings of the attorney are such that they may be recognized or inferred from the common knowledge or experience of laymen.") (citation omitted). In that situation, expert testimony as to the standards of care is not essential. *See id.*

Here, Sepulveda-Dean argues that an expert is not necessary because a lay person could determine whether Reiselt breached his duties toward her. In support, she makes a bald statement (without citation to where in the record such admission was allegedly made) that Reiselt "Stated and Admits he has Never seen Mary Sepulveda Dean's Files in almost four years," and also points to a number of alleged legal errors Reiselt made in representing Sepulveda-Dean. *See* Pl. Resp. at 1-4.

Because of the pro se status of the briefing, the Court conducted a close review of the whole record, but has not found any admission that Reiselt never saw Sepulveda-Dean's files. In fact, documents submitted by Sepulveda-Dean conclusively demonstrate that Reiselt was quite familiar with her file and that he submitted many reports and documents to the various administrative entities. *See*, *e.g.*, Pl. Mot. Not to Dismiss Ex. 21 (Sept. 2000 letter from Reiselt discussing case); Ex. 4 (May

2001 letter from Reiselt discussing case); Ex. 19 (memorandum by OWCP senior claims examiner noting arguments made and exhibits filed by Reiselt).

The Court concludes that an expert is necessary in this case, not only to explain to a juror what standard of conduct is reasonable and acceptable in representing individuals in workers compensation cases where an experienced paralegal is used and in establishing the standard of care required in such cases, but also in explaining the issue of proximate cause. *See Andrews*, 80 P.3d at 487. At trial, Sepulveda-Dean would have to persuade the jury that, but for Reiselt's breach of fiduciary duty or negligence, Sepulveda-Dean most likely would have won the appeal. *See id.*; *cf. George v. Caton*, 600 P.2d 822, 830 (N.M. Ct. App. 1979) ("In a malpractice action charging that an attorney's negligence . . . resulted in the loss of the client's claim, the measure of damages is the value of the lost claims, *i. e.*, the amount that would have been recovered by the client except for the attorney's negligence."). "[A] malpractice action against the attorney involves a trial within a trial, in which the plaintiff has the burden of proving by a preponderance of the evidence that (1) he would have recovered a judgment in the [underlying] action . . ., (2) the amount of that judgment, and (3) the degree of collectibility of such judgment." *George*, 600 P.2d at 830 (internal quotation marks omitted). Laymen generally are not familiar with legal standards and burdens of proof in appeals of agency decisions. *See Andrews*, 80 P.3d at 487 (stating that, "a jury, *aided by the testimony of experts versed in the relevant area of the law*, is capable of making a prediction as to the outcome of a hypothetical appeal with the degree of certainty required by a preponderance-of-the-evidence standard of proof") (italics added).

In New Mexico, summary judgment is proper if the plaintiff does not "obtain an expert to support their allegations of [] malpractice." *Blauwkamp v. Univ. of N.M. Hosp.*, 836 P.2d 1249,

15


1253 (N.M.. Ct. App. 1992). Because Sepulveda-Dean has not identified an expert witness within the case management deadlines, she cannot prove her case at trial. She was warned at the pretrial conference of the necessity of timely meeting all deadlines in the pretrial orders, including the discovery deadlines. *See* Tape of 1/11/06 pretrial conference. The Court will grant summary judgment in favor of the Defendants.

**IT IS ORDERED** that Defendant Gordon Reiselt's Motion to Dismiss [Doc. No. 10] is **GRANTED**; that Reiselt's Motion for Summary Judgment [Doc. No. 15] is **GRANTED**; that Reiselt's Motion to Strike Untimely Response [Doc. No. 18] is **DENIED**; and that William Dean may not file any further pleadings, motions, or notices on behalf of plaintiff Mary Sepulveda-Dean.

**Dated this 4th day of August, 2006.**

_____
**UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff:*
William Dean and Mary Sepulveda-Dean, pro se
1200 S. Torrey Pines, #90
Las Vegas, NV 89146

*Attorney for Defendant:*
Briggs Cheney
P.O. Box 271
Albuquerque, NM 87103